## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| A.K., a minor by her next friend and father, JAMES KILLIAN, and JAMES KILLIAN,<br><br>     Plaintiffs,<br><br>v.<br><br>USD 497,<br><br>     Defendant. | )<br>)<br>)<br>)   Case No.<br>)<br>)   **Jury Trial Demanded**<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

COMES NOW Plaintiff A.K., by and through her Natural Father and Next Friend James Killian, and Plaintiff James Killian, by and through counsel, Connor J. Pace of Beam-Ward, Kruse, Wilson & Fletes, LLC, and for their Petition for Damages against Unified School District 497, state and allege as follows:

1. This action seeks accountability for a school district's profound betrayal of trust, where repeated reports of a teacher's sexual harassment of a minor were met not with the protections of Title IX, but with a calculated campaign to bypass legal mandates, withhold the truth from parents, and orchestrate a cover-up of the district's own misconduct.

## PARTIES

2. Plaintiff A.K. is a minor and, at all times relevant hereto, was a citizen and resident of Douglas County, Kansas. Due to safety concerns, A.K. now resides in Missouri. Given Plaintiff A.K's minor status, this action is being brought by Plaintiff's natural father and anticipated next friend, James Killian.

3. Plaintiff James Killian is a citizen and resident of Douglas County, Kansas, over the age of 18.

4. Defendant Unified School District 497 (hereinafter the "District" or "USD 497" or "Lawrence Public Schools") is and was at all relevant times a public school district located in Douglas County, Kansas.

5. Defendant USD 497 is a public school district that owns and/or operates public schools in Lawrence, Douglas County, Kansas, including Lawrence Memorial Central Middle School.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the United States Constitution and laws and treaties of the United States.

7. This Court also has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege, or immunity secured by the Constitution of The United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

8. This Court also has jurisdiction over this case pursuant to 28 U.S.C. § 1367 as it has original jurisdiction over this matter as outlined above.

9. Plaintiff brings this action to redress a hostile educational environment pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), as more fully set forth herein.

10. This is also an action to redress the deprivation of Plaintiffs' Constitutional Rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b) because all parties reside in this judicial district and the events occurred in this judicial district

### TITLE IX REQUIREMENTS AND DEFENDANT'S TITLE IX POLICIES

12. Title IX, 20 U.S.C. § 1681(a) states, in part:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance

13. A school receiving federal funds that violates Title IX is subject to a private action for damages where the school is "deliberately indifferent" to known acts of discrimination against students. *Gebser v. Lago Vista Independent School District*, 524 U.S. 629 (1999).

14. At all times relevant hereto, Defendant received federal financial assistance through Title IX.

15. Accordingly, Defendant's operations are subject to the prohibition on sex discrimination under Title IX, 20 U.S.C. § 1681(a).

16. Defendant has and maintains a sexual harassment policy, the most recently revised version is attached hereto as Exhibit A and incorporated herein by reference (hereinafter the "Sexual Harassment Policy").

17. Defendant's Sexual Harassment Policy contains the following requirements:

    a. "It shall be a violation for any employee to discourage a student from filing a complaint, or to fail to investigate or refer for investigation, any complaint lodged under the provisions of this policy." Exhibit A, 1.

    b. "The district encourages all victims of sexual harassment and persons with knowledge of such harassment to report the harassment immediately." Exhibit A, 2.

c.  "Complaints of sexual harassment will be promptly investigated and resolved. Any person may make a verbal or written report of sex discrimination by any means at any time." Exhibit A, 2.

d.  "The district takes all reports of sexual harassment seriously and will respond meaningfully to every report of discrimination based on sex, including sexual harassment, of which the district has actual knowledge." Exhibit A, 2.

e.  "Any students who believe that he or she has been subjected to sexual harassment should report the alleged harassment to the building principal, another administrator, the guidance counselor, the Title IX coordinator, or another licensed staff member. <u>All employees receiving reports of sexual harassment from a student shall notify the Title IX Coordinator</u>." Exhibit A, 2 (emphasis added).

f.  "Any employee who…receives a complaint of harassment from another employee or student shall report the complaint to their immediate supervisor, building administrator, or Title IX Coordinator." Exhibit A, 4.

g.  "The Title IX Coordinator shall promptly respond in a meaningful way to any reports of sexual discrimination including sexual harassment of which the district has actual knowledge as follows:

   i.  Contact the complainant within 10 business days and discuss the availability of supportive measures, with or without the filing of a formal complaint, and consider the complainant's wishes as to supportive measures; and

   ii.  Inform the complainant of the right to a formal complaint investigation consistent with the Title IX and the informal resolution process." Exhibit A, 4-5.

4

18. The Code of Federal Regulations contains a number of regulations concerning the grievance process for Title IX complaints.

    a. A school district employee who receives "information about conduct that reasonably may constitute sex discrimination" must notify the Title IX Coordinator. 34 C.F.R. 106.44(c)(1).

    b. Upon receiving information of "conduct that reasonably may constitute sex discrimination," the Title IX Coordinator must "(i) treat the complainant and respondent equitably; … (iii)(A) Notify the complainant…of the grievance procedures under § 106.45." 34 C.F.R. 106.44(f)(1).

    c. However, the Title IX Coordinator – and only the Title IX Coordinator – is not obligated to comply with the obligations in 34 C.F.R. 106.44(f)(1)(i)-(vii) "if the Title IX Coordinator reasonably determines that the conduct as alleged would not constitute sex discrimination under Title IX or this part." 34 C.F.R. 106.44(f)(2).

    d. A school may dismiss a formal complaint of sexual harassment during their investigation if it "determines the conduct alleged in the complaint, even if proven, would not constitute sex discrimination under Title IX or this part. Prior to dismissing the complaint under this paragraph, the recipient must make reasonable efforts to clarify the allegations with the complainant." 34 C.F.R. § 106.45(d)(1)(iv) (emphasis added).

    e. If a school dismisses a complaint, it must "promptly notify the complainant of the basis for the dismissal," 34 C.F.R. § 106.45(d)(2), and "must notify the complainant that a dismissal may be appealed and provide the complainant with an opportunity to appeal the dismissal of a complaint," 34 C.F.R. § 106.45(d)(3).

f.  If a school dismisses a complaint, it "must, at a minimum: … (iii) require its Title IX Coordinate to take other appropriate prompt and effective steps to ensure that sex discrimination does not continue or recur within the recipient's education program." 34 C.F.R. § 106.45(d)(4).

19. A school is prohibited from disclosing information concerning reports, complaints, and investigations of sexual harassment unless the school "has obtained prior written consent from a person with the legal right to consent to the disclosure" or "[w]hen the information is disclosed to a parent, guardian, or other authorized legal representative with a legal right to receive disclosures on behalf of the person whose personally identifiable information is at issue." 34 C.F.R. § 106.44(j)(1), (2).

## FACTUAL ALLEGATIONS

20. Defendant USD 497 serves approximately 11,000 students and employs over 1,600 faculty and non-faculty staff across 11 elementary schools, 4 middle schools, and 2 high schools.

21. At all times relevant hereto, Defendant was responsible for enforcing its own policies and for ensuring its employees were adequately trained on these policies.

22. At all times relevant hereto, Defendant was responsible for ensuring compliance with its own policies and with federal law.

23. At all times relevant hereto, A.K. was a minor child and student at one of USD 497's schools: Liberty Memorial Central Middle School ("LMCMS").

24. At all times relevant hereto, A.K. was under the supervision, authority, and control of Defendant and its employees.

25. A.K. and James trusted Defendant to provide for A.K.'s safety.

26. There was a special relationship between A.K. and Defendant which gave A.K. a right to protection. Defendant stands in the place of a student's parents during school hours and has a duty to take reasonable steps to protect those individuals when the custodial circumstances limit an individual's ability to do so.

27. When A.K. was a young child, she became a victim of sexual harassment and battery.

28. A.K. received social services, namely therapy, as part of her educational curriculum.

29. At all times relevant hereto, Defendant was aware that A.K. is a victim of sexual abuse prior to the allegations of sexual harassment made herein.

*A.K.'s October 2023 Complaints of Sexual Harassment*

30. In October 2023, A.K. became a victim of sexual harassment and sex discrimination by Patrick Naughton, the gym teacher at LMCMS.

31. Defendant had a master/servant relationship with Mr. Naughton. Defendant had a duty of reasonable care to control and supervise Mr. Naughton even if Mr. Naughton was acting outside of the scope of his employment so as to prevent intentional harm to others. This duty is described in the law and in the Restatement of Torts 2d, 317.

32. A.K. reported the sexual harassment and sex discrimination to Student Resources Officer Dan Affalter Jr. .

33. Mr. Affalter brought A.K.'s reports of sexual harassment and sex discrimination to the attention of LMCMS.

34. A.K.'s complaint detailed inappropriate touching by Mr. Naughton on lower backs and bottoms of students, including A.K., and leering/staring at students' chests and bottoms, including A.K.'s (the "Fall 2023 Complaints").

35. The Fall 2023 Complaints included conduct that constitute sexual harassment and sex discrimination.

36. No investigation was conducted following these complaints.

37. Instead, Defendant interviewed A.K. and unilaterally concluded that A.K.'s reports did not constitute discrimination on the basis of sex.

38. The Fall 2023 Complaints were not reported to the Title IX Coordinator.

39. A.K. was not offered and did not receive any supportive measures following the Fall 2023 Complaints.

40. A.K's family, including James, were not notified of the Fall 2023 Complaints.

41. A.K. was not notified of or offered the opportunity to file a complaint regarding the Fall 2023 Complaints.

42. Defendant did nothing in response to the Fall 2023 Complaints.

43. Mr. Naughton was not investigated, removed from his position, or otherwise disciplined for the Fall 2023 Complaints.

44. Mr. Naughton continued to work as a gym teacher at LMCMS following the Fall 2023 Complaints.

45. Defendant's handling of A.K.'s Fall 2023 Complaints violated both District policy and federal mandates.

### *A.K.'s and James's Winter 2024 Complaints of Sexual Harassment*

46. On Friday, February 2, 2024, Phillip Mitchell, Assistant Principal at LMCMS, left a voicemail on James's phone stating that a staff member reported Mr. Naughton sexually harassed A.K. (the "Winter 2024 Complaints").

47. In the February 2 voicemail, Mr. Mitchell stated that A.K. was brought to Mr. Mitchell's office, questioned, and asked to confirm a written account of the harassment, which he called "a matter of record." He invited James to discuss the matter with him.

48. Upon hearing this voicemail, James immediately went to LMCMS and requested to speak with Mr. Mitchell.

49. Bizarrely, Mr. Mitchell was not present or able to discuss the matter with James, despite having just left a voicemail inviting a discussion with him.

50. Concerned for her safety, James excused A.K. from school and took her outside. James also called the Lawrence Police Department to report A.K.'s Winter 2024 Complaints to law enforcement.

51. While waiting for the police to arrive, A.K. told James that this was the second time she was victimized by Mr. Naughton. The first event occurred in October 2023, which is referred to in this *Complaint* as the "Fall 2023 Complaints."

52. James was shocked and horrified to learn that A.K. had previously reported sexual harassment by this same teacher to SRO Affalter but that no action was taken in response to A.K.'s complaints of sexual harassment.

53. February 2, 2024, was the first time James learned of the Fall 2023 Complaints and that the District failed to follow its own procedures or federal law in responding to them.

54. Officers Browning and Kemppainen of the Lawrence Police Department responded to LMCMS in response to James's request.

55. At some point while the police were present, tensions rose, and James and Officer Browning engaged in a heated exchange regarding the safety of A.K. and the response to A.K.'s prior report of sexual harassment and sex discrimination in Fall 2023.

56. James was ultimately issued a criminal trespass warning just for asking questions about the safety of his daughter and the handling of her sexual harassment complaints by Defendant and by the Lawrence Police Department.

57. James then excused A.K. from school for the rest of the day and took her home.

58. During the afternoon of February 2, James went to Defendant's district offices located on McDonald Drive.

59. While at Defendant's offices, James spoke with Ron May, then-Title IX Coordinator for Defendant, regarding the handling of the Fall 2023 Complaints and the Winter 2024 Complaints.

60. While at Defendant's offices, James submitted a written Title IX complaint to Defendant by handing it to Defendant's Title IX Coordinator ("James's Complaints").

61. James's Complaints included the sexual harassment and sex discrimination that A.K. had disclosed to him earlier that day.

62. James's Complaints included conduct that constitutes sexual harassment and sex discrimination.

63. Defendant did not provide a copy of James's Complaints to James.

64. Defendant did nothing in response to James's Complaints.

65. A.K. was not offered and did not receive any supportive measures following James's Complaints.

66. Defendant did not notify James in writing whether sex discrimination occurred, the rationale for the decision, and the right to appeal.

67. Mr. Naughton was not investigated, removed from his position, or otherwise disciplined for James's Complaints.

68. Mr. Naughton continued to work as a gym teacher at LMCMS following James's Complaints.

69. Defendant's handling of James's Complaints violated both District policy and federal mandates.

70. By all accounts, Defendant did nothing with James's Complaint.

71. On Monday, February 5, 2024, James sent an email to Mr. May, following up on their discussion from Friday regarding the handling of Plaintiffs' complaints of sexual harassment. James did not get a response to this email.

72. On Monday, February 5, Officer Affalter decided to begin investigating A.K.'s complaints of sexual harassment from last week.

73. As part of Officer Affalter's investigation, he took written statements from students, including A.K.

74. A.K.'s statement reported inappropriate touching by Mr. Naughton on backs and bottoms of students, including A.K., attempts to coax students into closets alone with him, and leering/staring at the girls' chests and bottoms, including A.K.'s.

75. However, Officer Affalter stopped investigating A.K.'s complaints of sexual harassment on February 5 due to other priorities.

76. On Tuesday, February 6, LMCMS Principal Jennifer Schmitt interviewed A.K. in her office and in the presence of Officer Affalter about A.K.'s complaint.

77. Defendant unilaterally concluded that A.K.'s Winter 2024 Complaints did not constitute discrimination on the basis of sex.

78. The Winter 2024 Complaints were not reported to the Title IX Coordinator.

79. A.K. was not offered and did not receive any supportive measures following the Winter 2024 Complaints.

80. A.K. was not notified of or offered the opportunity to file a complaint regarding the Winter 2024 Complaints.

81. Defendant did nothing in response to the Winter 2024 Complaints.

82. Mr. Naughton was not investigated, removed from his position, or otherwise disciplined for the Fall 2023 Complaints or Winter 2024 Complaints.

83. Mr. Naughton continued to work as a gym teacher at LMCMS following the Fall 2023 Complaints and Winter 2024 Complaints.

84. Defendant's handling of A.K.'s Winter 2024 Complaints violated both District policy and federal mandates.

*The District Covers Up the Complaints and its Systemic Failure*
*to Respond to them by Spinning the Narrative*

85. On February 7, 2024, Defendant issued a "No Trespass Warning" to James, informing that he is not allowed on Defendant's property.

86. On February 9, 2024, James commented on Defendant's Facebook page restating A.K.'s complaints, including that Defendant is investigating school children related to inappropriate touching by a faculty member.

87. Defendant replied to the comment, stating "This information is false. There have been no such allegations made."

88. To the contrary, A.K's. complaints included inappropriate contact, sexual harassment, and sex discrimination, and Defendant's employee admitted the same to James mere days earlier.

89. On the same day in a Facebook group for parents of LMCMS parents, James asked what would be done about the inappropriate touching by staff.

90. Defendant replied to this comment, "The sharing of false information is being forwarded to legal counsel for investigation of defamation."

91. To the contrary, A.K.'s complaints included inappropriate contact, sexual harassment, and sex discrimination, and Defendant's employee admitted the same to James mere days earlier.

92. To date, Defendant has not filed a lawsuit against James for defamation.

93. On February 10, 2024, Dr. Schmitt, on behalf of Defendant, sent an email to 743 families attending LMCMS entitled "Follow Up to Social Media Misinformation."

94. A copy of the February 10 email is attached hereto as Exhibit B.

95. In this February 10 email, Defendant stated, in part:

> I am writing to inform you that we have been made aware that false information is being shared on social media about allegations of inappropriate touching by a LMCMS staff member. There have been no such allegations made at our school.
>
> We did conduct an investigation last week of concerns reported by three students. These concerns were not allegations of inappropriate contact. We communicated with the families of these students about this investigation, in which it was determined that there is no safety issue.

96. To the contrary, A.K.'s complaints included inappropriate contact, sexual harassment, and sex discrimination, and Defendant's employee admitted the same to James mere days earlier.

*James and A.K.'s Request for Title IX Investigation Materials is Unanswered*

97. On September 11, 2024, Plaintiffs, through counsel, submitted Kansas Open Records Act requests to LMCMS and to USD 497 requesting various records and documents concerning A.K. and relating to investigative documents from Defendant's investigations of the Fall 2023 Complaint and the Winter 2024 Complaint.

98. A true and correct copy of Plaintiffs' open records request is attached hereto and incorporated herein by reference as Exhibit C, subject to redactions to protect A.K.'s identity.

99. Plaintiffs' open records request sought the following:

a. "[A.K.'s] entire student file, including enrollment information and applications, grade records, test results, attendance records, any psychological and/or medical records, and any other notes or documents of this nature

b. "[A.K.'s] disciplinary file, including any reports, forms, actions, or other similar documents

c. "All documents and records relating to the October 2023 incident, including witness statements, investigation records, videos, pictures, reports, notes, meeting minutes, correspondence, findings, conclusions, and any other document prepared or collected regarding the October 2023 incident.

d. "Any and all studies, investigations, reports, communications, and documents related to the October 2023 incident

e. "All witness statements, investigation records, reports, notes, meeting minutes, correspondence, findings, conclusions, and any other document prepared, collected, or related to the investigation of three students in February 2024 (the fact of the investigation was disclosed by Dr. Schmitt to "Mustang Families" on February 10, 2024, via email)

f. "The video recorded in October 2023 of an interview of [A.K.] and/or other students regarding any allegations of inappropriate contact

g. "The video recorded in January or February 2024 of an interview of [A.K.] and/or other students regarding any allegations of inappropriate.

h. "All videos of interviews and/or discussions regarding the October 2023 incident, whether or not [A.K.] was a party to such interview or discussion.

      i.   "The including, but not limited to, video of interviews in October 2023 AND January or February 2024

      j.   "Any document that [A.K.] signed from January 1, 2023, to present (excluding regular coursework assigned to all students)

      k.   "Any document that [A.K.] was asked to sign from January 1, 2023, to present (excluding regular coursework assigned to all students)

      l.   "Any and all 'public records', as defined by K.S.A. § 45-217, regarding the October 2023 incident."

100. Plaintiffs' open records request letter included an executed authorization permitting Defendant to disclose the requested documents and records as permitted by Title IX.

101. Plaintiffs' open records request letter also included a request for a litigation hold and for evidence preservation.

102. Plaintiffs' record request complied with all required elements of the Kansas Open Records act, K.S.A. § 45-215 *et seq.*

103. USD 497 did not respond at all to Plaintiff's request for open records, including by granting or denying access to such records.

104. USD 497 did not deny Plaintiff's request for open records.

105. USD 497 did not provide any statement of a grounds for denial of Plaintiff's request for open records.

106. USD 497's response, or lack thereof, did not provide any documents related to the Fall 2023 Complaints, the Winter 2024 Complaints, or James's Complaints, including the documents and things Defendant had told James existed, as discussed in this *Complaint*.

107. LMCMS responded to Plaintiff's request for open records by sending an email with a link to a cloud folder containing the following:

    a.  Grade, attendance, and behavior records for Plaintiff at LMCMS,

    b.  Grade, attendance, and behavior records for Plaintiff at other schools,

    c.  A copy of the February 10, 2024, email from Dr. Schmitt (attached as Exhibit C), and

    d.  Two written statements from staff members regarding James's conduct on February 2, 2024.

108. LMCMS did not otherwise respond to Plaintiff's request for open records, including by sending an explanation of what records, if any, access was denied.

109. LMCMS did not deny Plaintiff's request for open records.

110. LMCMS did not provide any statement of a grounds for denial of Plaintiff's request for open records.

111. LMCMS's response did not provide any documents related to the Fall 2023 Complaints, the Winter 2024 Complaints, or James's Complaints, including the documents and things Defendant had told James existed, as discussed in this *Complaint*.

### The District Admits to Not Handling A.K.'s Complaints Correctly

112. On April 4, 2025, James, with counsel, met with representatives of Defendant (including Ron May (then-Title IX Coordinator for Defendant), Larry Englebrick (superintendent of USD 497), and Kevin Harrell (incoming Title IX Coordinator)) via videoconference.

113. In advance of the meeting, James told Defendant that his attorney would be attending the meeting.

114. During the meeting, Mr. May told James that USD 497 had dropped the ball related to the handling of A.K.'s complaints. Specifically, Mr. May admitted that the proper procedures were

not followed regarding A.K.'s Fall 2023 Complaints or Winter 2024 Complaints, that Defendant did not handle the complaints properly, and that Plaintiffs were invited to file yet another Title IX complaint.

115. Plaintiffs did not immediately file another Title IX complaint because they had lost faith that Defendant would handle this complaint properly due to Defendant's mishandling of the Fall 2023 Complaints, the Winter 2024 Complaints, and James's Complaint.

*The District Later Claims it Handled A.K.'s Complaints Correctly*

116. Ultimately, Plaintiffs opted to make a fourth Title IX Complaint in order to give Defendant an opportunity to fix the mistakes it had made handling the Fall 2023 Complaints, the Winter 2024 Complaints, and James's Complaint.

117. On October 2, 2025, Plaintiffs sent a written request to Defendant pursuant to Title IX to complete a full investigation into the Fall 2023 Complaints, the Spring 2024 Complaints, and the lack of investigation into each of these complaints.

118. A true and accurate copy of the written request is attached hereto as Exhibit D and incorporated herein by reference.

119. On October 3, 2025, Defendant requested Plaintiffs submit the complaint using its form. Accordingly, Plaintiffs copied the information from the October 2 written request onto the Defendant's complaint form and submitted it on October 6, 2025 (the "October 2025 Complaints").

120. A true and accurate copy of the October 2025 Complaints is attached hereto as Exhibit D and incorporated herein by reference.

121. On November 5, 2025, Defendant responded to the October 6 Complaints by dismissing them.

122. A true and accurate copy of Defendant's response is attached hereto as Exhibit F and incorporated herein by reference.

123. The District's response acknowledged that it did not notify the Title IX coordinator or follow its own investigation procedures. Nevertheless, the District *dismissed* as untimely and by retroactively determining that the conduct alleged did not meet the definition of sexual harassment.

124. Defendant did not attempt to clarify Plaintiffs' allegations prior to dismissal.

125. Defendant did not notify Plaintiffs that the dismissal may be appealed.

126. Defendant did not provide an opportunity for Plaintiffs to present fact witnesses or any other relevant evidence.

127. Defendant did not provide an opportunity for Plaintiffs to access any evidence.

128. On November 14, 2025, Plaintiffs appealed Defendant's dismissal of this Title IX complaint.

129. A true and accurate copy of Plaintiffs' appeal is attached hereto as Exhibit G and incorporated herein by reference.

130. On December 4, 2025, Plaintiffs had not received any information concerning the appeal and contacted Mr. Harrell requesting the status of the appeal and whether the appellate decision-maker had been designated.

131. On December 8, 2025, Mr. Harrell responded to Plaintiffs' email by copying Samrie Devin, an employee of Defendant, and advising that Plaintiffs should contact Ms. Devin.

132. On December 10, 2025, Plaintiffs emailed Ms. Devin, asking for an opportunity, consistent with its grounds for appeal, to present additional relevant information that was not included in the initial investigations.

133. A true and accurate copy of the email correspondence regarding this appeal is attached hereto as Exhibit H and incorporated herein by reference.

134. To date, Defendant has not responded to Plaintiffs' Title IX appeal.

135. To date, Plaintiffs have not received a written decision and the rationale for the decision on appeal.

136. Plaintiffs do not believe notice pursuant to the Kansas Tort Claims Act is required for this action.

137. Nevertheless, out of an abundance of caution and pursuant to K.S.A. § 12-105b, Plaintiffs have sent a notice to Defendant stating (1) the name and address of the Plaintiffs and their attorney; (2) a statement of the claims; (3) the names of known public officers and employees involved; (4) a statement of the nature and extent of the Plaintiffs' injuries, and (5) a claim for monetary damages sought by Plaintiffs.

138. Plaintiffs' notice substantially complied with the requirements of K.S.A. § 12-105b.

139. Defendant's conduct deprived A.K. of rights secured by the United States Constitution and Federal law, as discussed throughout this *Complaint.*

140. Defendant's conduct alleged throughout this *Complaint*, including through its agents, was done under color of law in that Defendant in that Defendant was exercising its authority given to it by the federal law and at all times Defendant acted as if federal law authorized it.

141. As a direct result of the conduct alleged herein, A.K. has suffered missed educational opportunities, missed school, had to avoid the teacher and administration, participated less in school, fear and panic at school, and was forced to move across state lines to pursue education elsewhere.

142. As a direct result of the conduct alleged herein, Plaintiffs have suffered and continue to suffer great pain of mind, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, missed educational opportunities, out of pocket costs, and other damages.

143. Plaintiffs have incurred and will continue to incur necessary and reasonable expenses for medical and psychological treatment, therapy, and counseling as well as other economic hardships as a direct and proximate result of Defendant's conduct.

144. Plaintiffs have incurred and will continue to incur necessary and reasonable attorney fees and costs to pursue this action.

<u>**COUNT I – Sex Discrimination and Harassment**</u>
<u>**Creating a Hostile Educational Environment**</u>
<u>**(Fall 2023 Complaints)**</u>

145. Plaintiffs incorporate by reference each and every prior paragraph of this *Complaint* as if set forth fully herein.

146. Defendant receives and has received federal financial assistance through Title IX during all relevant times mentioned in this *Complaint*.

147. Accordingly, Defendant's entire operations are subject to the prohibition on sex discrimination under Title IX, 20 U.S.C. § 1681(2)(A).

148. A.K. is a member of a protected class.

149. A.K. was, and continues to be, harassed and subjected to humiliating and demeaning conduct at the hands of Defendant and its agents, based on A.K.'s sex in that:

    a.   Defendant failed to notify the Title IX coordinator of the Fall 2023 Complaints;

    b.   Defendant failed to advise A.K. of her right to file a formal Title IX complaint;

    c.   Defendant failed to advised James of A.K.'s Fall 2023 Complaints;

d.   Defendant failed to investigate the Fall 2023 Complaints;

e.   Defendant disregarded A.K.'s Fall 2023 Complaints;

f.   Defendant failed to treat A.K. equitably;

g.   Defendant failed to offer and coordinate supportive measures for A.K.;

h.   Defendant failed to allow A.K. to seek modification or reversal of Defendant's decision to provide, deny, modify, or terminate supportive measures;

i.   Defendant failed to ensure that nobody involved had a conflict of interest;

j.   Defendant failed to require an objective evaluation of the evidence;

k.   Defendant failed to ensure the burden of investigating the Fall 2023 Complaints was on Defendant;

l.   Defendant failed to provide an equal opportunity to A.K. to present fact witnesses;

m.   Defendant failed to provide an equal opportunity to A.K. to access evidence;

n.   Defendant failed to permit A.K. have an attorney or advisor;

o.   Defendant failed to notify A.K. in writing whether sex discrimination occurred, the rationale for the decision, and the right to appeal;

p.   Defendant failed to limit Mr. Naughton's interaction with children in light of A.K.'s Fall 2023 Complaints;

q.   Defendant requires a written complaint to initiate the Title IX grievance process, which is inconsistent with federal law and due process;

r.   Defendant failed to adhere to Title IX statutes and regulations regarding the receipt, investigation, and disposition of A.K.'s Fall 2023 Complaints;

s.   Defendant failed to adhere to its own Title IX policy regarding the receipt, investigation, and disposition of A.K.'s Fall 2023 Complaints;

t.  Defendant dismissed A.K.'s Fall 2023 Complaints without first attempting to clarify the allegations; and

u.  Defendant dismissed A.K.'s Fall 2023 Complaints without statutory authority because only the Title IX Coordinator has authority to dismiss Title IX complaints.

150. The harassment and discrimination A.K. suffered and continues to suffer is so severe, pervasive, and objectively offensive that it and Defendant's failure to respond effectively constituted harassment and discrimination against A.K. on the basis of sex.

151. Further, Defendant's failure to follow its own discrimination and harassment policy also constitutes harassment and discrimination against A.K. on the basis of sex.

152. Defendant's employees, agents, and officers had actual knowledge that A.K. was victimized by sexual assault as a child.

153. Defendant's employees, agents, and officers had actual knowledge of the harassment and discrimination and had authority to take corrective measures.

154. Defendant had actual knowledge that A.K. had been sexually harassed in October 2023.

155. Despite having knowledge of the harassing, discriminatory, and demeaning conduct, Defendant failed to take any corrective measures.

156. Defendant failed to remedy the hostile educational environment to which A.K. was exposed, even after having notice of the harassment and discrimination.

157. Any reasonable person in A.K.'s position would have felt that he or she was being subjected to a hostile educational environment due to Defendant's failure to follow its own procedures and federal mandates to investigate and remedy the pervasive and severe sexual harassment and sex discrimination of which A.K. was exposed.

158. Defendant acted with deliberate indifference to known acts of sexual harassment and sex discrimination toward A.K.

159. Defendant's acts and omissions constituted discrimination and indifference against A.K. on the basis of sex.

160. Defendant's conduct is prohibited by Title IX.

161. As a direct and proximate result of Defendant's conduct, A.K. has suffered and continues to suffer great pain of mind, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, missed educational opportunities, out of pocket costs, and other damages.

162. A.K. has incurred and will continue to incur necessary and reasonable expenses for medical and psychological treatment, therapy, and counseling as well as other economic hardships as a direct and proximate result of Defendant's conduct.

163. A.K. has incurred and will continue to incur necessary and reasonable attorney fees and costs to pursue this action pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiffs pray for judgment against Defendant USD 497 for such damages as are fair and reasonable in excess of $75,000.00, for costs and attorney fees, and such other and further relief as the Court may deem just, fair and equitable.

## COUNT II – Sex Discrimination and Harassment
## Creating a Hostile Educational Environment
## (Winter 2024 Complaints)

164. Plaintiffs incorporate by reference each and every prior paragraph of this *Complaint* as if set forth fully herein.

165. Defendant receives and has received federal financial assistance through Title IX during all relevant times mentioned in this *Complaint*.

166. Accordingly, Defendant's entire operations are subject to the prohibition on sex discrimination under Title IX, 20 U.S.C. § 1681(2)(A).

167. A.K. is a member of a protected class.

168. A.K. was, and continues to be, harassed and subjected to humiliating and demeaning conduct at the hands of Defendant and its agents, based on A.K.'s sex in that:

    a.   Defendant failed to notify the Title IX coordinator of the Winter 2024 Complaints;

    b.   Defendant failed to advise A.K. of her right to file a formal Title IX complaint;

    c.   Defendant failed to advised James of A.K.'s Winter 2024 Complaints;

    d.   Defendant failed to investigate the Winter 2024 Complaints;

    e.   Defendant disregarded A.K.'s Winter 2024 Complaints;

    f.   Defendant failed to treat A.K. equitably;

    g.   Defendant failed to offer and coordinate supportive measures for A.K.;

    h.   Defendant failed to allow A.K. to seek modification or reversal of Defendant's decision to provide, deny, modify, or terminate supportive measures;

    i.   Defendant failed to ensure that nobody involved had a conflict of interest;

    j.   Defendant failed to require an objective evaluation of the evidence;

    k.   Defendant failed to ensure the burden of investigating the Winter 2024 Complaints was on Defendant;

    l.   Defendant failed to provide an equal opportunity to A.K. to present fact witnesses;

    m.   Defendant failed to provide an equal opportunity to A.K. to access evidence;

    n.   Defendant failed to permit A.K. have an attorney or advisor;

    o.   Defendant failed to notify A.K. in writing whether sex discrimination occurred, the rationale for the decision, and the right to appeal;

p.  Defendant failed to limit Mr. Naughton's interaction with children in light of A.K.'s Winter 2024 Complaints;

q.  Defendant requires a written complaint to initiate the Title IX grievance process, which is inconsistent with federal law and due process;

r.  Defendant failed to adhere to Title IX statutes and regulations regarding the receipt, investigation, and disposition of A.K.'s Winter 2024 Complaints;

s.  Defendant failed to adhere to its own Title IX policy regarding the receipt, investigation, and disposition of A.K.'s Winter 2024 Complaints;

t.  Defendant dismissed A.K.'s Winter 2024 Complaints without first attempting to clarify the allegations; and

u.  Defendant dismissed A.K.'s Winter 2024 Complaints without statutory authority because only the Title IX Coordinator has authority to dismiss Title IX complaints.

169. The harassment and discrimination A.K. suffered and continues to suffer is so severe, pervasive, and objectively offensive that it and Defendant's failure to respond effectively constituted harassment and discrimination against A.K. on the basis of sex.

170. Further, Defendant's failure to follow its own discrimination and harassment policy also constitutes harassment and discrimination against A.K. on the basis of sex.

171. Defendant's employees, agents, and officers had actual knowledge that A.K. was victimized by sexual assault as a child.

172. Defendant's employees, agents, and officers had actual knowledge of the harassment and discrimination and had authority to take corrective measures.

173. Defendant had actual knowledge that A.K. had been sexually harassed in October 2023 and February 2024.

174. Despite having knowledge of the harassing, discriminatory, and demeaning conduct, Defendant failed to take any corrective measures.

175. Defendant failed to remedy the hostile educational environment to which A.K. was exposed, even after having notice of the harassment and discrimination.

176. Any reasonable person in A.K.'s position would have felt that he or she was being subjected to a hostile educational environment due to Defendant's failure to follow its own procedures and federal mandates to investigate and remedy the pervasive and severe sexual harassment and sex discrimination of which A.K. was exposed.

177. Defendant acted with deliberate indifference to known acts of sexual harassment and discrimination toward A.K.

178. Defendant's acts and omissions constituted discrimination and indifference against A.K. on the basis of sex.

179. Defendant's conduct is prohibited by Title IX.

180. As a direct and proximate result of Defendant's conduct, A.K. has suffered and continues to suffer great pain of mind, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, missed educational opportunities, out of pocket costs, and other damages.

181. A.K. has incurred and will continue to incur necessary and reasonable expenses for medical and psychological treatment, therapy, and counseling as well as other economic hardships as a direct and proximate result of Defendant's conduct.

182. A.K. has incurred and will continue to incur necessary and reasonable attorney fees and costs to pursue this action pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiffs pray for judgment against Defendant USD 497 for such damages as are fair and reasonable in excess of $75,000.00, for costs and attorney fees, and such other and further relief as the Court may deem just, fair and equitable.

## COUNT III – Sex Discrimination and Harassment
## Creating a Hostile Educational Environment
## (James's Complaints)

183. Plaintiffs incorporate by reference each and every prior paragraph of this *Complaint* as if set forth fully herein.

184. Defendant receives and has received federal financial assistance through Title IX during all relevant times mentioned in this *Complaint*.

185. Accordingly, Defendant's entire operations are subject to the prohibition on sex discrimination under Title IX, 20 U.S.C. § 1681(2)(A).

186. A.K. is a member of a protected class.

187. A.K. was, and continues to be, harassed and subjected to humiliating and demeaning conduct at the hands of Defendant and its agents, based on A.K.'s sex in that:

    a.   Defendant failed to investigate the James's Complaints;

    b.   Defendant disregarded James's Complaints;

    c.   Defendant failed to treat Plaintiffs equitably;

    d.   Defendant failed to offer and coordinate supportive measures for A.K.;

    e.   Defendant failed to allow A.K. to seek modification or reversal of Defendant's decision to provide, deny, modify, or terminate supportive measures;

    f.   Defendant failed to ensure that nobody involved had a conflict of interest;

    g.   Defendant failed to require an objective evaluation of the evidence;

h.   Defendant failed to ensure the burden of investigating James's Complaints was on Defendant;

i.   Defendant failed to provide an equal opportunity to Plaintiffs to present fact witnesses;

j.   Defendant failed to provide an equal opportunity to Plaintiffs to access evidence;

k.   Defendant failed to permit A.K. have an attorney or advisor;

l.   Defendant failed to notify Plaintiffs in writing whether sex discrimination occurred, the rationale for the decision, and the right to appeal;

m.   Defendant failed to limit Mr. Naughton's interaction with children in light of James's Complaints;

n.   Defendant requires a written complaint to initiate the Title IX grievance process, which is inconsistent with federal law and due process;

o.   Defendant failed to adhere to Title IX statutes and regulations regarding the receipt, investigation, and disposition of James's Complaints; and

p.   Defendant failed to adhere to its own Title IX policy regarding the receipt, investigation, and disposition of James's Complaints.

188. The harassment and discrimination A.K. suffered and continues to suffer is so severe, pervasive, and objectively offensive that it and Defendant's failure to respond effectively constituted harassment and discrimination against A.K. on the basis of sex.

189. Further, Defendant's failure to follow its own discrimination and harassment policy also constitutes harassment and discrimination against A.K. on the basis of sex.

190. Defendant's employees, agents, and officers had actual knowledge that A.K. was victimized by sexual assault as a child.

191. Defendant's employees, agents, and officers had actual knowledge of the harassment and discrimination and had authority to take corrective measures.

192. Defendant had actual knowledge that A.K. had been sexually harassed in February 2024.

193. Despite having knowledge of the harassing, discriminatory, and demeaning conduct, Defendant failed to take any corrective measures.

194. Defendant failed to remedy the hostile educational environment to which A.K. was exposed, even after having notice of the harassment and discrimination.

195. Any reasonable person in A.K.'s position would have felt that he or she was being subjected to a hostile educational environment due to Defendant's failure to follow its own procedures and federal mandates to investigate and remedy the pervasive and severe sexual harassment and sex discrimination of which A.K. was exposed.

196. Defendant acted with deliberate indifference to known acts of sexual harassment and discrimination toward A.K.

197. Defendant's acts and omissions constituted discrimination and indifference against A.K. on the basis of sex.

198. Defendant's conduct is prohibited by Title IX.

199. As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered and continues to suffer great pain of mind, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, missed educational opportunities, and out of pocket costs.

200. Plaintiffs have incurred and will continue to incur necessary and reasonable expenses for medical and psychological treatment, therapy, and counseling as well as other economic hardships as a direct and proximate result of Defendant's conduct.

201. Plaintiffs have incurred and will continue to incur necessary and reasonable attorney fees and costs to pursue this action pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiffs pray for judgment against Defendant USD 497 for such damages as are fair and reasonable in excess of $75,000.00, for costs and attorney fees, and such other and further relief as the Court may deem just, fair and equitable.

## COUNT IV – Sex Discrimination and Harassment
## Creating a Hostile Educational Environment
## (Fall 2025 Complaints)

202. Plaintiffs incorporate by reference each and every prior paragraph of this *Complaint* as if set forth fully herein.

203. Defendant receives and has received federal financial assistance through Title IX during all relevant times mentioned in this *Complaint*.

204. Accordingly, Defendant's entire operations are subject to the prohibition on sex discrimination under Title IX, 20 U.S.C. § 1681(2)(A).

205. A.K. is a member of a protected class.

206. A.K. was, and continues to be, harassed and subjected to humiliating and demeaning conduct at the hands of Defendant and its agents, based on A.K.'s sex relating in that:

    a.  Defendant disregarded the Fall 2025 Complaints;

    b.  Defendant failed to treat A.K. and James equitably;

    c.  Defendant failed to offer and coordinate supportive measures for A.K.;

    d.  Defendant failed to allow A.K. to seek modification or reversal of Defendant's decision to provide, deny, modify, or terminate supportive measures;

    e.  Defendant failed to ensure that nobody involved had a conflict of interest;

    f.  Defendant failed to require an objective evaluation of the evidence;

g.  Defendant failed to ensure the burden of investigating the Fall 2025 Complaints was on Defendant;

h.  Defendant failed to provide an equal opportunity to A.K. to present fact witnesses;

i.  Defendant failed to provide an equal opportunity to A.K. to access evidence;

j.  Defendant requires a written complaint to initiate the Title IX grievance process, which is inconsistent with federal law and due process;

k.  Defendant failed to adhere to Title IX statutes and regulations regarding the receipt, investigation, and disposition of the Fall 2025Complaints;

l.  Defendant failed to adhere to its own Title IX policy regarding the receipt, investigation, and disposition of the Fall 2025Complaints;

m.  Defendant dismissed the Fall 2025 Complaints without first attempting to clarify the allegations;

n.  Defendant failed to advise Plaintiffs of their right to appeal the dismissal of the Fall 2025 complaints; and

o.  Defendant failed to respond at all to Plaintiffs' appeal of the dismissal of the Fall 2025 complaints.

207. The harassment and discrimination A.K. suffered and continues to suffer is so severe, pervasive, and objectively offensive that it and Defendant's failure to respond effectively constituted harassment and discrimination against A.K. on the basis of sex.

208. Further, Defendant's failure to follow its own discrimination and harassment policy also constitutes harassment and discrimination against A.K. on the basis of sex.

209. Defendant's employees, agents, and officers had actual knowledge that A.K. was victimized by sexual assault as a child.

210. Defendant's employees, agents, and officers had actual knowledge of the harassment and discrimination and had authority to take corrective measures.

211. Defendant had actual knowledge that A.K. had been sexually harassed in October 2023 and February 2024.

212. Despite having knowledge of the harassing, discriminatory, and demeaning conduct, Defendant failed to take any corrective measures.

213. Defendant failed to remedy the hostile educational environment to which A.K. was exposed, even after having notice of the harassment and discrimination *three times*.

214. Any reasonable person in A.K.'s position would have felt that he or she was being subjected to a hostile educational environment due to Defendant's conduct in failing to effectively investigate remedy the pervasive and severe sexual harassment and discrimination of which A.K. was exposed.

215. Defendant acted with deliberate indifference to known acts of sexual harassment and discrimination toward A.K.

216. Defendant's acts and omissions constituted discrimination and indifference against A.K. on the basis of sex.

217. Defendant's conduct is prohibited by Title IX.

218. As a direct and proximate result of Defendant's conduct, A.K. has suffered and continues to suffer great pain of mind, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, missed educational opportunities, and out of pocket costs.

219. A.K. has incurred and will continue to incur necessary and reasonable expenses for medical and psychological treatment, therapy, and counseling as well as other economic hardships as a direct and proximate result of Defendant's conduct.

220. A.K. has incurred and will continue to incur necessary and reasonable attorney fees and costs to pursue this action pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiffs pray for judgment against Defendant USD 497 for such damages as are fair and reasonable in excess of $75,000.00, for costs and attorney fees, and such other and further relief as the Court may deem just, fair and equitable.


### COUNT V – Retaliation
### (A.K.'s Fall 2023 Complaints)

221. Plaintiffs incorporate by reference each and every prior paragraph of this *Complaint* as if set forth fully herein.

222. A.K. is a member of a protected class.

223. Defendant receives and has received federal financial assistance through Title IX during all relevant times mentioned in this *Complaint*.

224. Accordingly, Defendant's entire operations are subject to the prohibition on sex discrimination under Title IX, 20 U.S.C. § 1681(2)(A).

225. A.K. engaged in a protected activity under Title IX in October 2023 when they reported being subjected to sexual harassment.

226. Contemporaneous and shortly after engaging in a protected activity, A.K. suffered adverse actions, including:

    a.   Defendant failing to notify the Title IX coordinator of the Fall 2023 Complaints;

    b.   Defendant failing to advise A.K. of her right to file a formal Title IX complaint;

c.  Defendant failing to advise James of A.K.'s Fall 2023 Complaints;

d.  Defendant failing to investigate the Fall 2023 Complaints;

e.  Defendant disregarding A.K.'s Fall 2023 Complaints;

f.  Defendant failing to treat A.K. equitably;

g.  Defendant failing to offer and coordinate supportive measures for A.K.;

h.  Defendant failing to allow A.K. to seek modification or reversal of Defendant's decision to provide, deny, modify, or terminate supportive measures;

i.  Defendant failing to ensure that nobody involved had a conflict of interest;

j.  Defendant failing to require an objective evaluation of the evidence;

k.  Defendant failing to ensure the burden of investigating the Fall 2023 Complaints was on Defendant;

l.  Defendant failing to provide an equal opportunity to A.K. to present fact witnesses;

m.  Defendant failing to provide an equal opportunity to A.K. to access evidence;

n.  Defendant failing to permit A.K. have an attorney or advisor;

o.  Defendant failing to notify A.K. in writing whether sex discrimination occurred, the rationale for the decision, and the right to appeal;

p.  Defendant failing to limit Mr. Naughton's interaction with children in light of A.K.'s Fall 2023 Complaints;

q.  Defendant requiring a written complaint to initiate the Title IX grievance process, which is inconsistent with federal law and due process;

r.  Defendant failing to adhere to Title IX statutes and regulations regarding the receipt, investigation, and disposition of A.K.'s Fall 2023 Complaints;

s.  Defendant failing to adhere to its own Title IX policy regarding the receipt, investigation, and disposition of A.K.'s Fall 2023 Complaints;

t.  Defendant dismissing A.K.'s Fall 2023 Complaints without first attempting to clarify the allegations; and

u.  Defendant dismissing A.K.'s Fall 2023 Complaints without statutory authority because only the Title IX Coordinator has authority to dismiss Title IX complaints.

227. A.K.'s protected activity and the adverse actions are causally related in that they occurred within days of each other and related to the Defendant's obligations to A.K. in the receipt, investigation, and disposition of A.K.'s Fall 2023 Complaints

228. Defendant had actual knowledge of the retaliation Plaintiffs were suffering in that

a.  Defendant had actual knowledge of its own policies and procedures regarding the receipt, investigation, and disposition of complaints of sexual harassment;

b.  Defendant had actual knowledge of the requirements of Title IX regarding the receipt, investigation, and disposition of complaints of sexual harassment; and

c.  Defendant knew it had not afforded A.K. the opportunities granted to A.K. in Defendant's own policies and procedures and through Title IX.

229. Defendant did not adequately respond to the retaliation in that it did not allow A.K. the opportunities granted by Defendant's own policies or federal law.

230. Defendant actual knowledge of the sex discrimination and sexual harassment suffered by A.K.

231. Furthermore, Defendant deliberately failed to supervise employees that had the means and authority to stop the harassment A.K. experienced and to follow

232. Defendant's indifference and resulting inaction was deliberate, wanton, willful, and with reckless disregard and neglect of Plaintiffs' rights, safety, and well-being.

233. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer great pain of mind, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, missed educational opportunities, out of pocket costs, and other damages.

234. Plaintiff has incurred and will continue to incur necessary and reasonable expenses for medical and psychological treatment, therapy, and counseling as well as other economic hardships as a direct and proximate result of Defendant's conduct.

235. Plaintiff has incurred and will continue to incur necessary and reasonable attorney fees and costs to pursue this action pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiffs pray for judgment against Defendant USD 497 for such damages as are fair and reasonable in excess of $75,000.00, for costs and attorney fees, and such other and further relief as the Court may deem just, fair and equitable.

## COUNT VI – Retaliation
### (A.K.'s Winter 2024 Complaints)

236. Plaintiffs incorporate by reference each and every prior paragraph of this *Complaint* as if set forth fully herein.

237. A.K. is a member of a protected class.

238. Defendant receives and has received federal financial assistance through Title IX during all relevant times mentioned in this *Complaint*.

239. Accordingly, Defendant's entire operations are subject to the prohibition on sex discrimination under Title IX, 20 U.S.C. § 1681(2)(A).

240. A.K. engaged in a protected activity under Title IX in February 2024 when they reported being subjected to sexual harassment.

241. Contemporaneous and shortly after engaging in a protected activity, A.K. suffered adverse actions, including:

   a.  Defendant failing to notify the Title IX coordinator of the Winter 2024 Complaints;

   b.  Defendant failing to advise A.K. of her right to file a formal Title IX complaint;

   c.  Defendant failing to advise James of A.K.'s Winter 2024 Complaints;

   d.  Defendant failing to investigate the Winter 2024 Complaints;

   e.  Defendant disregarding A.K.'s Winter 2024 Complaints;

   f.  Defendant failing to treat A.K. equitably;

   g.  Defendant failing to offer and coordinate supportive measures for A.K.;

   h.  Defendant failing to allow A.K. to seek modification or reversal of Defendant's decision to provide, deny, modify, or terminate supportive measures;

   i.  Defendant failing to ensure that nobody involved had a conflict of interest;

   j.  Defendant failing to require an objective evaluation of the evidence;

   k.  Defendant failing to ensure the burden of investigating the Winter 2024 Complaints was on Defendant;

   l.  Defendant failing to provide an equal opportunity to A.K. to present fact witnesses;

   m.  Defendant failing to provide an equal opportunity to A.K. to access evidence;

   n.  Defendant failing to permit A.K. have an attorney or advisor;

   o.  Defendant failing to notify A.K. in writing whether sex discrimination occurred, the rationale for the decision, and the right to appeal;

   p.  Defendant failing to limit Mr. Naughton's interaction with children in light of A.K.'s Winter 2024 Complaints;

q. Defendant requiring a written complaint to initiate the Title IX grievance process, which is inconsistent with federal law and due process;

r. Defendant failing to adhere to Title IX statutes and regulations regarding the receipt, investigation, and disposition of A.K.'s Winter 2024 Complaints;

s. Defendant failing to adhere to its own Title IX policy regarding the receipt, investigation, and disposition of A.K.'s Winter 2024 Complaints;

t. Defendant dismissing A.K.'s Winter 2024 Complaints without first attempting to clarify the allegations; and

u. Defendant dismissing A.K.'s Winter 2024 Complaints without statutory authority because only the Title IX Coordinator has authority to dismiss Title IX complaints.

242. A.K.'s protected activity and the adverse actions are causally related in that they occurred within days of each other and related to the Defendant's obligations to A.K. in the receipt, investigation, and disposition of A.K.'s Winter 2024 Complaints

243. Defendant had actual knowledge of the retaliation Plaintiffs were suffering in that

a. Defendant had actual knowledge of its own policies and procedures regarding the receipt, investigation, and disposition of complaints of sexual harassment;

b. Defendant had actual knowledge of the requirements of Title IX regarding the receipt, investigation, and disposition of complaints of sexual harassment; and

c. Defendant knew it had not afforded A.K. the opportunities granted to A.K. in Defendant's own policies and procedures and through Title IX.

244. Defendant did not adequately respond to the retaliation in that it did not allow A.K. the opportunities granted by Defendant's own policies and through Title IX.

245. Defendant actual knowledge of the discrimination and harassment suffered by A.K.

246. Furthermore, Defendant deliberately failed to supervise employees that had the means and authority to stop the harassment A.K. experienced and to follow

247. Defendant's indifference and resulting inaction was deliberate, wanton, willful, and with reckless disregard and neglect of Plaintiffs' rights, safety, and well-being.

248. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer great pain of mind, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, missed educational opportunities, out of pocket costs, and other damages.

249. Plaintiff has incurred and will continue to incur necessary and reasonable expenses for medical and psychological treatment, therapy, and counseling as well as other economic hardships as a direct and proximate result of Defendant's conduct.

250. Plaintiff has incurred and will continue to incur necessary and reasonable attorney fees and costs to pursue this action pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiffs pray for judgment against Defendant USD 497 for such damages as are fair and reasonable in excess of $75,000.00, for costs and attorney fees, and such other and further relief as the Court may deem just, fair and equitable.


### COUNT VII – Retaliation
### (James's Complaints)

251. Plaintiffs incorporate by reference each and every prior paragraph of this *Complaint* as if set forth fully herein.

252. A.K. is a member of a protected class.

253. Defendant receives and has received federal financial assistance through Title IX during all relevant times mentioned in this *Complaint*.

254. Accordingly, Defendant's entire operations are subject to the prohibition on sex discrimination under Title IX, 20 U.S.C. § 1681(2)(A).

255. James engaged in a protected activity under Title IX in February 2024 when he filed a Title IX Complaint with Defendant.

256. Contemporaneous and shortly after engaging in a protected activity, Plaintiffs suffered adverse actions, including:

    a.  Defendant failing to investigate James's Complaints;

    b.  Defendant barring James from school grounds;

    c.  Defendant disregarding James's Complaints;

    d.  Defendant failing to treat Plaintiffs equitably;

    e.  Defendant failing to offer and coordinate supportive measures for A.K.;

    f.  Defendant failing to allow A.K. to seek modification or reversal of Defendant's decision to provide, deny, modify, or terminate supportive measures;

    g.  Defendant failing to ensure that nobody involved had a conflict of interest;

    h.  Defendant failing to require an objective evaluation of the evidence;

    i.  Defendant failing to ensure the burden of investigating James's Complaints was on Defendant;

    j.  Defendant failing to provide an equal opportunity to Plaintiffs to present fact witnesses;

    k.  Defendant failing to provide an equal opportunity to Plaintiffs to access evidence.

    l.  Defendant failing to permit Plaintiffs have an attorney or advisor;

    m.  Defendant failing to notify Plaintiffs in writing whether sex discrimination occurred, the rationale for the decision, and the right to appeal;

n.  Defendant failing to limit Mr. Naughton's interaction with children in light of A.K.'s Fall 2023 Complaints, Winter 2024 Complaints, and James's Complaints;

o.  Defendant requiring a written complaint to initiate the Title IX grievance process, which is inconsistent with federal law and due process;

p.  Defendant failing to adhere to Title IX statutes and regulations regarding the receipt, investigation, and disposition of James's Complaints; and

q.  Defendant failing to adhere to its own Title IX policy regarding the receipt, investigation, and disposition of James's Complaints.

257. James's protected activity and the adverse actions are causally related in that they occurred within days of each other and related to the Defendant's obligations to Plaintiffs in the receipt, investigation, and disposition of James's Complaints

258. Defendant had actual knowledge of the retaliation Plaintiffs were suffering in that

a.  Defendant had actual knowledge of its own policies and procedures regarding the receipt, investigation, and disposition of complaints of sexual harassment;

b.  Defendant had actual knowledge of the requirements of Title IX regarding the receipt, investigation, and disposition of complaints of sexual harassment; and

c.  Defendant knew it had not afforded A.K. the opportunities granted to A.K. in Defendant's own policies and procedures and through Title IX.

259. Defendant did not adequately respond to the retaliation in that it did not allow A.K. the opportunities granted by Defendant's own policies and through Title IX.

260. Defendant actual knowledge of the discrimination and harassment suffered by A.K.

261. Furthermore, Defendant deliberately failed to supervise employees that had the means and authority to stop the harassment A.K. experienced and to follow its own policies.

262. Defendant's indifference and resulting inaction was deliberate, wanton, willful, and with reckless disregard and neglect of Plaintiffs' rights, safety, and well-being.

263. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer great pain of mind, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, missed educational opportunities, out of pocket costs, and other damages.

264. Plaintiff has incurred and will continue to incur necessary and reasonable expenses for medical and psychological treatment, therapy, and counseling as well as other economic hardships as a direct and proximate result of Defendant's conduct.

265. Plaintiff has incurred and will continue to incur necessary and reasonable attorney fees and costs to pursue this action pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiffs pray for judgment against Defendant USD 497 for such damages as are fair and reasonable in excess of $75,000.00, for costs and attorney fees, and such other and further relief as the Court may deem just, fair and equitable.

## COUNT VIII – Retaliation
### (Fall 2025 Complaints)

266. Plaintiffs incorporate by reference each and every prior paragraph of this *Complaint* as if set forth fully herein.

267. A.K. is a member of a protected class.

268. Defendant receives and has received federal financial assistance through Title IX during all relevant times mentioned in this *Complaint*.

269. Accordingly, Defendant's entire operations are subject to the prohibition on sex discrimination under Title IX, 20 U.S.C. § 1681(2)(A).

270. Plaintiffs engaged in a protected activity under Title IX in October 2025 when they reported being subjected to sexual harassment.

271. Contemporaneous and shortly after engaging in a protected activity, Plaintiffs suffered adverse actions, including:

    a. Defendant failing to investigate the Fall 2025 Complaints;

    b. Defendant disregarding the Fall 2025 Complaints;

    c. Defendant failing to treat Plaintiffs equitably;

    d. Defendant failing to offer and coordinate supportive measures for A.K.;

    e. Defendant failing to allow A.K. to seek modification or reversal of Defendant's decision to provide, deny, modify, or terminate supportive measures;

    f. Defendant failing to ensure that nobody involved had a conflict of interest;

    g. Defendant failing to require an objective evaluation of the evidence;

    h. Defendant failing to ensure the burden of investigating the Fall 2025 Complaints was on Defendant;

    i. Defendant failing to provide an equal opportunity to A.K. to present fact witnesses;

    j. Defendant failing to provide an equal opportunity to A.K. to access evidence;

    k. Defendant failing to notify A.K. in writing whether sex discrimination occurred, the rationale for the decision, and the right to appeal;

    l. Defendant failing to limit Mr. Naughton's interaction with children in light of A.K.'s Fall 2023 Complaints;

    m. Defendant requiring a written complaint on Defendant's specific form to initiate the Title IX grievance process, which is inconsistent with federal law and due process;

n.  Defendant failing to adhere to Title IX statutes and regulations regarding the receipt, investigation, and disposition of the Fall 2025 Complaints;

o.  Defendant failing to adhere to its own Title IX policy regarding the receipt, investigation, and disposition of the Fall 2025 Complaints;

p.  Defendant dismissing the Fall 2025 Complaints without first attempting to clarify the allegations; and

q.  Defendant dismissing the Fall 2025 Complaints as time-barred within Defendant's procedures, despite the fact that Defendant deceptively hid information, did not follow its own procedures, did not respond to requests for information, and otherwise obstructed Plaintiffs' investigation.

272. Plaintiffs' protected activity and the adverse actions are causally related in that they occurred within days of each other and related to the Defendant's obligations to A.K. in the receipt, investigation, and disposition of A.K.'s complaints of sexual harassment.

273. Defendant had actual knowledge of the retaliation Plaintiffs were suffering in that

a.  Defendant had actual knowledge of its own policies and procedures regarding the receipt, investigation, and disposition of complaints of sexual harassment;

b.  Defendant had actual knowledge of the requirements of Title IX regarding the receipt, investigation, and disposition of complaints of sexual harassment; and

c.  Defendant knew it had not afforded A.K. the opportunities granted to A.K. in Defendant's own policies and procedures and through Title IX.

274. Defendant did not adequately respond to the retaliation in that it did not allow A.K. the opportunities granted by Defendant's own policies and through Title IX.

275. Defendant actual knowledge of the discrimination and harassment suffered by A.K.

276. Furthermore, Defendant deliberately failed to supervise employees that had the means and authority to stop the harassment A.K. experienced and to follow

277. Defendant's indifference and resulting inaction was deliberate, wanton, willful, and with reckless disregard and neglect of Plaintiffs' rights, safety, and well-being.

278. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer great pain of mind, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, missed educational opportunities, out of pocket costs, and other damages.

279. Plaintiff has incurred and will continue to incur necessary and reasonable expenses for medical and psychological treatment, therapy, and counseling as well as other economic hardships as a direct and proximate result of Defendant's conduct.

280. Plaintiff has incurred and will continue to incur necessary and reasonable attorney fees and costs to pursue this action pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiffs pray for judgment against Defendant USD 497 for such damages as are fair and reasonable in excess of $75,000.00, for costs and attorney fees, and such other and further relief as the Court may deem just, fair and equitable.

## COUNT IX – Outrage and Intentional Infliction of Emotional Distress

281. Plaintiffs incorporate by reference each and every prior paragraph of this *Complaint* as if set forth fully herein.

282. Defendant has actual knowledge its policies regarding the handling of Title IX complaints.

283. Defendant has actual knowledge of the statutory requirements of handling Title IX complaints.

284. Nevertheless, Defendant acted intentionally or in reckless disregard of the Plaintiffs by failed to follow any of its own policies or Title IX regarding the handling of the Fall 2023 Complaints, Winter 2024 Complaints, James's Complaints, and Fall 2025 Complaints in that Defendant:

    a. Was required to report the Fall 2023 Complaints and the Winter 2024 Complaints to the Title IX Coordinator but did not;

    b. Was required to notify Plaintiffs of the Fall 2023 Complaints but did not;

    c. Interviewed A.K. without permission from her parents;

    d. Was required to conduct fair, impartial investigations but did not;

    e. Was required to treat Plaintiffs equitably but did not;

    f. Was required to provide an equal opportunity to present evidence but did not;

    g. Was required to provide an equal opportunity to access the evidence;

    h. Was required to offer supportive measures to Plaintiff but did not;

    i. Was required to allow Plaintiffs to seek modification or reversal of Defendant's decision to provide, deny, modify, or terminate supportive measures but did not;

    j. Was required to issue a written disposition of the complaints did not; and

    k. Failed to follow its own procedures and federal mandates regarding the handling of Title IX complaints, as discussed throughout this *Complaint*.

285. Defendant's actions were extreme.

286. Defendant's actions were outrageous.

287. Defendant's actions go beyond the bounds of decency.

288. Defendant's actions were atrocious and utterly intolerable in a civilized community.

289. Title IX was enacted to protect students from discrimination, and its grievance procedures were established to protect students reporting discriminatory conduct from unfair bias and to ensure complaints are fully investigated and resolved.

290. Defendant's actions are extreme, outrageous, beyond the bounds of decency, atrocious, and utterly intolerable in that Defendant's actions directly contradict and belie the purposes for which Title IX was established.

291. If Defendant is free to disregard the procedures of Title IX, then the protections it creates are meaningless.

292. Defendant's actions caused Plaintiffs to suffer extreme and severe emotional distress.

293. As a direct result of Defendant's actions, Plaintiffs genuinely endured mental sufferings that are long lasting and debilitating and requiring extensive medical treatment and medication.

294. No reasonable person should be expected to endure sexual harassment and, when reported, have their reports of sexual harassment disregarded and belittled instead of taken seriously.

295. No reasonable person should be expected to endure watching their child, already a victim of sexual abuse, endure sexual harassment and be disregarded and belittled instead of taken seriously.

296. As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered and continue to suffer great pain of mind, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, missed educational opportunities, out of pocket costs, and other damages.

297. Plaintiffs have incurred and will continue to incur necessary and reasonable expenses for medical and psychological treatment, therapy, and counseling as well as other economic hardships as a direct and proximate result of Defendant's conduct.

298. Plaintiffs have incurred and will continue to incur necessary and reasonable attorney fees and costs to pursue this action.

WHEREFORE Plaintiffs pray for judgment against Defendant USD 497 for such damages as are fair and reasonable in excess of $75,000.00, for costs and attorney fees, and such other and further relief as the Court may deem just, fair and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury on all issues in this litigation.

Respectfully Submitted,

BEAM-WARD, KRUSE, WILSON
& FLETES, LLC

By: /s/ *Connor J. Pace*
CONNOR J. PACE, KS 28769
8645 College Blvd., Ste. 250
Overland Park, KS 66210
(913) 339-6888
(913) 339-9653 facsimile
cpace@bkwflaw.com
ATTORNEY FOR PLAINTIFFS